THOMAS SCOTT STRICKLAND,        )
                                )
                Plaintiff,      )
                                )
        v.                      )        1:06CV144
                                )
MELTON JEWELL, d/b/a AUTOMOTIVE )
FASTENERS, INC., JAMES          )
REITTINGER, d/b/a AUTOMOTIVE    )
FASTENERS, INC., and DONNA MYERS, )
                                )
                Defendants.     )

## MEMORANDUM OPINION AND ORDER

**Eliason, Magistrate Judge**

Plaintiff filed a four-count complaint against Defendants in state court. Because the case involved claims of workplace harassment in violation of 42 U.S.C. § 2000e ("Title VII"), Defendants removed the case to this Court. As will be seen, the complaint makes allegations against Plaintiff's employer, Automotive Fasteners, Inc. ("AFI"), which is not a party to this action. Instead, Plaintiff named James Reittinger ("Reittinger") and Milton Jewell ("Jewell"), who he said have operated AFI as a partnership since its dissolution and liquidation in 1989 and 1991. As it turns out, this assumption by Plaintiff is not true and AFI is a viable corporation. Although Defendants informed Plaintiff of this fact shortly after the case was filed, only after discovery ended and Defendants filed their motion for summary judgment did Plaintiff seek to add or substitute Automotive Fasteners as a party.

In Count I of his complaint, Plaintiff alleges that his former supervisor Defendant Donna Myers ("Myers") "physically assaulted" him, and that Defendant Reittinger and non-party Automotive Fasteners, Inc. should also be held responsible because they approved or ratified the assault by failing to investigate and take action against Meyers. He next alleges that AFI created a "sexually hostile work environment" in violation of Title VII (Count II) and retaliated against him for reporting sexual harassment in violation of N. C. Gen. Stat. § 143-422.2 (Count III). Finally, in Count IV of his complaint, Plaintiff brings state law claims of both intentional and negligent infliction of emotional distress against Defendants Myers, Jewell and Reittinger, the latter two allegedly being officers and/or owners of the company.

Defendants move for summary judgment on all counts pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Docket No. 20.) Although submitted after Defendants filed their motion for summary judgment, Plaintiff requests permission to amend his complaint to dismiss Jewell and Reittinger as party defendants and add AFI as a defendant. (Docket No. 22). Presumably, Plaintiff would like this motion ruled on prior to the motion for summary judgment. Because resolution of Plaintiff's motion impacts several issues surrounding summary judgment, the Court will consider the parties' motions together.

## Facts

Defendant Reittinger is the president of AFI, a North Carolina corporation established in 1982. Defendant Myers manages the company's branch in High Point, North Carolina. Plaintiff, a former sales associate for AFI, first worked in the High Point branch through a temporary agency before Myers hired him in December 2004. Plaintiff claims that Myers, his direct supervisor, sexually harassed him in numerous ways, including inappropriate touching and comments, sexual advances, and "displays of pornography" during both his temporary status and his approximately eight-month employment with AFI. (Compl. ¶ 11; Pl.'s Dep. pp. 77-80.) He details these incidents as follows.

The most serious one occurred in February or March of 2005, Plaintiff alleges that he was "physically assaulted" by Myers as he drank from a water fountain. (Compl. ¶ 22.) This occurred when Myers came up from behind him and grabbed him between the legs. (Pl.'s Dep. p. 88.) On the other hand, Plaintiff does not recall exactly when this incident occurred, what part of his anatomy Myers actually touched, or whether they said anything to one another during or after the encounter. (Id. pp. 88-89.) Unfortunately for Plaintiff, he cannot remember the actual time of the event and, more importantly, whether it was before or after the time he and co-employee Winfrey met with Jim and Jimmy Reittinger. (Id. p. 87.) In any event, Plaintiff cannot remember telling the Reittingers about anything that was happening to him, other than

-3-

that Donna Meyers was sexually harassing him by lifting her shirt, passing pictures, and kissing Matt Winfrey.  (<u>Id.</u> p. 80-81).

Plaintiff also describes several occasions on which Myers made allegedly inappropriate comments and advances.  First, during Plaintiff's temporary employment, Myers took him to her home in a company truck to help her with a tiling project.  (Pl.'s Dep. pp. 77-80.)  As Plaintiff unloaded tile, he claims that Myers asked him if he wanted to see her bedroom.  (<u>Id.</u>)  Plaintiff declined and claims that Myers' request made him "feel uncomfortable and nervous."  (Pl.'s Opp. Br. 4.)  Later, at some undefined time, Myers allegedly told Plaintiff that she only hired him because of his good looks.  (Pl.'s Dep. p. 97.)  This comment occurred closer to when Plaintiff was fired (<u>id.</u> p. 98) and because of the friction between the two, it is not clear that this was not said sarcastically.

Plaintiff next claims that his work environment, and particularly Myers' behavior, remained sexually charged throughout his employment with AFI, but his recollection is so vague that he can only recall Meyers lifting up her shirt and that the sexual harassment consisted of telling "dirty jokes" which he now cannot remember.  (<u>Id.</u> p. 95.)  As far as Plaintiff knows, he never told Meyers to stop.  (<u>Id.</u> p. 97.)  He can recall nothing about the incidents or how many times they happened.  (<u>Id.</u> p. 99.)  He cannot even remember if he saw any part of her body.  (<u>Id.</u>)  He claims Meyers got another co-employee to touch a breast, but essentially remembers nothing about the incident.  In fact, all he saw was that

-4-

the male grabbed a breast and her smiling. (_Id._ pp. 100–102.)
Plaintiff has no evidence that Meyers instigated the event. (_Id._)
On the other hand, Plaintiff testified inconsistently that he asked
for and obtained pictures of Meyers and Wendy Hunt ("Hunt"), and
also that he does not remember getting the pictures. (_Id._ p.
127.)[1]  He also has no recollection of the first incident of
discrimination. (_Id._ p. 94).  The only specific harassment that he
now remembers is the "invitation to see her bedroom" incident and
the "touching between his legs" incident. (_Id._)

    Myers admits that she and others often made joking comments of
a sexual nature, such as double entendres on the word "screw" or
statements that she couldn't go up front because her "headlights"
were on, meaning that her nipples were hard. (Myers Dep. pp. 133-
134.)  She also admits to telling employees, including Plaintiff,
a joke referencing her "pussy." (_Id._ pp. 123-125.)  In addition,
Myers acknowledges that Plaintiff, a relatively small man, was
embarrassed at some undefined time when a larger female employee,
Wendy Hunt, picked him up. (_Id._ pp. 127-128.)  However, Plaintiff
himself never mentions this incident, nor does he describe it as
being sexually harassing, nor did he complain about it to any
supervisor or tell Hunt to stop.  Hunt also exposed her breasts in
the office on at least one occasion, although it is unclear whether
she did so in Plaintiff's presence. (_Id._ pp. 128-129.)  Plaintiff

---

[1]There were pictures of a co-employee named Wendy Hunt which showed her
breasts.  These were seen by Plaintiff because they were passed around by co-
employees.  He claims that an obscene photo was hung up on the bulletin board,
but cannot remember or describe the picture. (Pl.'s Dep. p. 128.)

further alleges that he witnessed Myers giving Matt Winfrey a peck on the cheek, one instance where a customer and Meyers grabbed at each other, and Meyers kissing her boyfriend or husband. (Pl.'s Dep. pp. 103-104, 142.)

Plaintiff claims that the actions of Myers and certain of his female co-employees caused him to suffer emotional problems both during and after his employment with AFI. He describes the symptoms of his alleged emotional distress as follows: "It's hard to sleep. I have nightmares. I smoke more. I don't eat as much as I'm supposed to. All day long I'm stressed out and exhausted." (Pl.'s Dep. p. 66.) After an initial doctor's visit, however, Plaintiff only sought a doctor's care for these symptoms on one other occasion, this time more than a year after he left AFI's employ. (Id.)

On March 2, 2005, Plaintiff claims that he, accompanied by co-workers Matt Winfrey ("Winfrey") and Long, reported his allegations of workplace sexual harassment at a meeting with AFI's management. (Pl.'s Dep. p. 88.) Defendants claim that only Winfrey reported harassment by Defendant Myers at this time. (Reittinger Aff. ¶ 9.) As noted earlier, Plaintiff has little memory of the event. Nevertheless, Plaintiff contends that, after the meeting, Myers targeted him for termination. However, even before the March 2nd meeting, Myers required Plaintiff to keep a log of everything he did during the day in an attempt to keep him on task. (Defs.' Opp. Br. Ex. 4.) Plaintiff alleges that Myers later incorrectly blamed him for everything from incorrect and late product orders to

-6-

setting off stink bombs in the office. (Id.) Defendants, in turn, claim that Plaintiff played practical jokes on Myers and often disappeared for long stretches of time on unauthorized breaks. (Myers Dep. p. 77; Hunt Aff. ¶ 4; Lambeth Aff. ¶ 10.) They also claim that Plaintiff was insubordinate to Myers on many occasions, openly called her a "bitch," and yelled at her and shoved her shortly before he left AFI. (See, e.g., Lambeth Aff. ¶¶ 8-11, 16; Hunt Aff. ¶¶ 5, 12.)

Plaintiff finally left the company in July 2005 in order to find a better job. Shortly before doing so, he filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging sexual harassment by Myers. On August 31, 2005, the EEOC issued a determination finding that a Title VII violation had occurred. Plaintiff subsequently filed the action now before the Court.

## Discussion

### Plaintiff's Motion to Amend

Plaintiff seeks to amend his complaint to dismiss Defendants Jewell and Reittinger and substitute AFI as the sole corporate defendant in this case. He contends that defense counsel consented to the proposed amendment in April 2006, and thereafter both sides treated AFI as a party. (Pl.'s Supporting Br. 2-3.) Defendants only concede that the parties "discussed the possibility of amendment" in April 2006, including changes and clarifications to be made by Plaintiff along with the proposed party substitution. They argue, however, that Plaintiff's opportunity to amend the pleadings expired on May 1, 2006 when the Court ordered that any

-7-

amendments be filed by that date. (<u>See</u> Docket No. 10.) However, Plaintiff did not file his motion to amend until April 6, 2007, nearly a year later and one month <u>after</u> Defendants filed their summary judgment motion. Moreover, Plaintiff has not even submitted a proposed amended complaint.

In the motion, Plaintiff fails to offer any reason for non-compliance with the Court's order, nor for the extremely belated and deficient motion. Instead, he proffers two e-mails from Defendants' counsel. One in February 2006 merely talks about amending the complaint in state court. The other, on April 25, 2006, from Defendants' counsel states:

> I have reviewed your proposed amended complaint. I would only ask that you make it clear that the count under Title VII is against the corporate defendant only and the intentional tort is against the individual only.
>
> If you make those changes – you may advise the court that I consent to your proposed amended complaint when you seek leave to file same.

Plaintiff now interprets that second paragraph as giving him <u>carte blanche</u> to file the amended complaint adding the corporation as a party at any time.

Defendants disagree and point out that the Joint Rule 26(f) Report approved by the Court required Plaintiff to file the amendment on or before May 1, 2006. As a result of Plaintiff's inaction, Defendant Jewell was not voluntarily dismissed by Plaintiff, but by the Court <u>sua</u> <u>sponte</u> pursuant to Fed. R. Civ. P. 4(m) for failure to serve process. Defendants maintain that they never consented to an amendment after May 1, 2006 and have

-8-

conducted the litigation at all times as being against Meyers and James Reittinger d/b/a Automotive Fasteners, Inc. This was made clear to Plaintiff by Reittinger's Interrogatory responses. (Docket No. 23.)[2] Although Plaintiff did not file a reply brief, it is evident from the original motion that Plaintiff contends that the motion to amend should be granted because the mere substitution of "the proper name of the corporate defendant, Automotive Fasteners, Inc., will not prejudice anyone and the delay was not occasioned by bad faith."

Plaintiff's position does not adequately describe the situation before the Court. It only considers Fed. R. Civ. P. 15(a), which has been interpreted to mean that amendments to pleadings should only be denied if they would prejudice the opposing side or would be futile, or if bad faith was involved. Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006). The Laber court went on to add that delay alone ordinarily will not be sufficient to deny a motion to amend with the caveat that the further the case progresses, the more likely it is that the amendment will prejudice the opposing side or will help support a finding of bad faith. Id. And that observation rings true for the instant case.

Here, Defendants have already filed their summary judgment motion and to add a party would require rebriefing at a minimum and

_____

[2]Plaintiff claims that, because Defendants' counsel identified herself as the attorney for Automotive Fasteners, Inc. at his deposition, this shows the corporation had consented to be made a party at any time. However, that reads far too much into the statement.

-9-

perhaps the reopening of discovery.  Plaintiff has not submitted

the proposed complaint, so it is not possible to predict what the

full consequences would be.  For one thing, earlier, Defendants

made clear that any amendment must not allege any intentional tort

against the corporation.  This would seem to mean that only Meyers

would be the subject of such claims, yet Plaintiff continues to

argue that Reittinger (the corporation) should be held liable for

the infliction of emotional distress claims, and has not dropped

AFI from the assault claim.  Therefore, the specter of prejudice

and bad faith emanates from Plaintiff's motion and serves as

grounds to deny it.

In addition, the Fourth Circuit's discussion in <u>Laber</u> of the

policy of liberally allowing amendments explicitly acknowledged it

did not take into account the "good cause" requirement of Fed. R.

Civ. P. 16(b) which applies to motions filed after the deadline

established in a scheduling order.   <u>Id.</u>, 438 F.3d at 427 n.23.

That is the situation in this case.

> Rule 16(b) provides that a scheduling order "shall
> not be modified except upon a showing of good cause and
> by leave of the district judge or, when authorized by
> local rule, by a magistrate judge." As a result of Rule
> 16(b),  when a party moves to amend his pleading after
> the scheduled time for amendments has passed, the party
> is effectively asking the court both for an amendment to
> the scheduling order and for leave to amend the pleading.
> . . .   Thus, in deciding whether Plaintiffs should be
> granted leave to amend their complaint, it is necessary
> to consider first whether Plaintiff's can satisfy the
> "good cause standard of Rule 16(b) before addressing the
> more lenient standard of Rule 15(a).

> "Good cause" under Rule 16(b) exists when evidence
> supporting the proposed amendment would not have been
> discovered "in the exercise of due diligence" until after

> the amendment deadline had passed.  Thus, even if the opposing party would not be prejudiced by the modification of a scheduling order, good cause is not shown if the amendment could have been timely made.

Dewitt v. Hutchins, 309 F. Supp. 2d 743, 748 (M.D.N.C. 2004) (internal citations omitted).

Plaintiff acknowledges that he failed to comply with the scheduling order in this case.  He does not and cannot contend that he discovered new evidence subsequent to May 1, 2006 or provide any explanation as to why his motion was not timely made.  His sole reason for permitting amendment at this late date is his contention that, because both parties treated AFI as a defendant, no prejudice would result.  However, the crucial issue in a Rule 16(b) inquiry is diligence as opposed to simply lack of prejudice or bad faith. Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992), Essential Housing Management, Inc. v. Walker, 166 F.3d 332, 1998 WL 559349 (4th Cir. June 9, 1998)(Table, Text in Westlaw). Plaintiff's failure to allege any cognizable excuse for his late filing, let alone one showing "good cause," is fatal to his motion. The failure to submit the proposed amendment compounds the lack of diligence.   The motion to amend is, therefore, denied, and Reittinger and Myers remain the only two defendants for purposes of Defendants' summary judgment motion.

### Summary Judgment Standard

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine

-11-

issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must view the evidence in a light most favorable to the non-moving party. Pachaly v. City of Lynchburg, 897 F.2d 723, 725 (4th Cir. 1990). When opposing a properly supported motion for summary judgment, the party cannot rest on conclusory statements, but must provide specific facts, particularly when that party has the burden of proof on an issue. Id. "The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, *in the form of admissible evidence*, that could carry the burden of proof of his claim at trial." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993) (emphasis added). A mere scintilla of evidence will not suffice. Rather, there must be enough evidence for a jury to render a verdict in favor of the party making a claim. Sibley v. Lutheran Hosp. of Maryland, Inc., 871 F.2d 479, 486 (4th Cir. 1989).

### Assault

Plaintiff's first claim, set out in Count I of the complaint, alleges that "Defendant Myers, in her capacity as Branch Manager for Automobile Fasteners, Inc., used her managerial authority to repeatedly assault and touch, in a sexual manner, without consent, approval or authorization, the body of the plaintiff." (Compl. ¶ 18.)[3] Defendants seek summary judgment on the ground that

---

[3]As will be seen, the contention of repeated assaults and touching is a gross exaggeration of a one time event.

Plaintiff's allegations do not meet the definition of common law civil assault.

Under North Carolina law, civil assault occurs when a person is put in apprehension of harmful or offensive contact, but no actual contact occurs. <u>See</u> <u>Hawkins v. Hawkins</u>, 101 N.C. App. 529, 531, 400 S.E.2d 472, 474 (1991). As Defendants correctly assert, "[t]he gravamen of this tort is the apprehension of the alleged harmful contact." (Defs.' Br. 17)(<u>citing</u> <u>Wilson v. Bellamy</u>, 105 N.C. App. 446, 414 S.E.2d 347 (1992)). Because, in this instance, Myers allegedly approached Plaintiff from behind as he drank from a fountain, there is no evidence that he was even aware of her presence, let alone apprehensive that she would touch him in a harmful or offensive manner. Thus, Plaintiff cannot establish that he was assaulted. However, he contends that Count I should not be dismissed "because it clearly sets forth the necessary elements of battery," despite being mislabeled as an assault claim. (Pl.'s Resp. Br. 11.)

The Federal Rules of Civil Procedure do not require a plaintiff to set out the legal theories underlying his claims for relief. A complaint need only set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, the label placed on a claim in the pleadings is not decisive; instead, the nature of the issues raised is controlling. The Fourth Circuit has held that, even where "a label reflects a flat misapprehension by counsel respecting a claim's legal basis, dismissal on that ground alone is

-13-

not warranted so long as any needed correction of legal theory will not prejudice the opposing party." <u>Labram v. Havel</u>, 43 F.3d 918, 920 (4th Cir. 1995)(citing 5 Charles A. Wright & Arthur R. Miller, <u>Federal Practice & Procedure</u>, § 1219 at 281-283 (3d ed. 2004)). Therefore, the key issue in this case is whether the complaint gives Defendants "fair notice of the nature and basis or grounds of the claim and a general indication of the type of litigation involved." <u>Labram</u>, 43 F.3d at 920 (quoting <u>Burlington Industries, Inc. v. Milliken & Co.</u>, 690 F.2d 380, 390 (4th Cir. 1982)). In this case, the Court finds that the complaint does provide fair notice.

As detailed above, Plaintiff alleges that Defendant Myers touched his body "in a sexual manner, without consent." (Compl. ¶ 18.) In a subsequent paragraph, he refers to being "physically assaulted" by Myers in February or March of 2005 and describes the incident wherein Myers "grabbed his genital area" at the water fountain. (<u>Id.</u> ¶ 22.) Together, these factual allegations set out the grounds for Plaintiff's claim by addressing the four elements of battery: (1) intent, (2) harmful or offensive contact, (3) causation, and (4) lack of privilege. <u>See</u> <u>Hawkins</u>, 101 N.C. App. at 533. Facts supporting elements two and four are plainly stated in the complaint itself, while both causation and intent may be inferred given the generally high probability and substantial certainty that harm will result from any nonconsensual sexual touching. Further, because Plaintiff's allegations have remained unchanged throughout the litigation thus far, Defendants have been

-14-

on notice of the "nature and basis" of his tort claim from the time the suit was filed.  In light of these facts, Defendants cannot claim that the conspicuous mislabeling of battery as assault significantly prejudices them.  The motion for summary judgment as to Count I of the complaint is, therefore, denied as to Defendant Myers.

Plaintiff also apparently includes Defendant Reittinger in this count on the basis that Reittinger was notified of the assault and failed to take action.  (Plaintiff did not accede to Defendants' request in their brief that Reittinger be dismissed from this count.)  However, as noted earlier, there is no evidence that Plaintiff notified Reittinger of the alleged assault, which may well have occurred after Plaintiff and Winfrey met with Reittinger.

In order to survive a summary judgment motion, Plaintiff must offer more than a scintilla of evidence or evidence that is conclusory or not significantly probative as to the issue before the Court.  Sylvia Development Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).  The need to identify specific facts supporting the elements of the claim is particularly acute for a the non-moving party (such as Plaintiff) who has the burden of proof.  Pachaly, 897 F.2d at 725.  The plaintiff must present specific material facts supporting the elements and not mere speculation.  Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Corp., 65 F.3d 1113, 1119 (4th Cir. 1995).  Moreover, the proffered evidence may not include hearsay or other inadmissible

-15-

evidence or rumors. <u>Greensboro Professional Fire Fighters Ass'n,</u> <u>Local 3157 v. City of Greensboro</u>, 64 F.3d 962, 967 (4th Cir. 1995). Statements in the form of conclusions are not sufficient unless all the intended inferences are reasonably possible based on facts before the court, as opposed to being based on mere conjecture. <u>JKC Holding Co. LLC v. Washington Sports Ventures, Inc.</u>, 264 F.3d 459, 465 (4th Cir. 2001); <u>Sylvia</u>, 48 F.3d at 818.

In the instant case, Plaintiff merely makes the conclusory statement in his verified complaint that Reittinger was notified of the assault. However, there is no time, date, or other facts to flesh out the conclusion, which remains conjectural. Moreover, in his deposition, Plaintiff testified he only told Reittinger: "Donna Meyers was sexually harassing us, sexually harassing me" (Pl.'s Dep. p. 80), and was lifting her shirt and passing pictures (<u>id.</u> p. 81). There is no mention of the alleged assault, which, in any event, may well have occurred, it if did, after the meeting. Thus, at best, Plaintiff has offered conflicting versions of the facts which cannot create an issue as to whether Reittinger was notified of the alleged assault and, therefore, ratified it by inaction. <u>Halperin v. Abacus Technology Corp.</u>, 128 F.3d 191, 198 (4th Cir. 1997). For this reason, the assault claim must be dismissed as to him.

### Hostile Work Environment

Plaintiff next claims that the employment practices at AFI created a "sexually hostile work environment" in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1). In this count, only non-Defendant

-16-

Automotive Fasteners, Inc. is named. This problem will be discussed a little later.

In order to prevail on such a claim, Plaintiff must prove: "(1) unwelcome conduct; (2) that is based on the plaintiff's sex; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." <u>Conner v. Schrader-Bridgeport International, Inc</u>., 227 F.3d 179, 192 (4th Cir. 2000)(citing <u>Spicer v. Commonwealth of Va. Dep't of Corrections</u>, 66 F.3d 705, 709-10 (4th Cir. 1995)). In the present case, Defendants contend that Plaintiff cannot establish the second or third elements of his claim, i.e., that the alleged conduct was based on sex or was sufficiently severe or pervasive to survive summary judgment.

Defendants' first contention contains a conspicuous flaw. In arguing that any sexual inappropriateness was "clearly not behavior directed toward Plaintiff because of his sex," they ignore certain factual allegations. They only discuss the possibility that Plaintiff may well have been exposed to "off color jokes, flirtatious behavior," and explicit photographs regardless of his sex, which were not directed at him. (Def.'s Br. 14.) In this, they are correct. Little, if any, of this conduct was directed at Plaintiff, but was the atmosphere created by the employees. However, they ignore the incidents in which Defendant Myers allegedly touched Plaintiff between his legs, invited him into her bedroom, or told him that she only hired him because of his looks.

-17-

This conduct was specifically directed at Plaintiff because of his gender. That is, but for his gender, Plaintiff would not have been subjected to Myers' alleged advances. Thus, summary judgment cannot be granted as to all of the alleged harassing conduct, based on this particular argument.

Defendants' other argument is somewhat more persuasive. It questions the severity element of his Title VII claim. Not all incidents of hostility or those of an offensive nature are of such significance that a hostile environment is created. Rather, in considering whether an incident or incidents create a hostile environment sufficient to support a Title VII claim, courts must examine (1) the frequency of the incidents, (2) their severity, (3) whether the incidents were physically threatening or humiliating, or merely offensive, (4) whether the conduct unreasonably interfered with Plaintiff's work, and (5) what psychological harm resulted. Conner, 227 F.3d at 192 (citing Harris v. Forklift Systems Inc., 510 U.S. 17, 23 (1993)). Incidents are not to be considered separately. Instead, the totality of the situation should be assessed. Id. In employing these principles, as the Seventh Circuit points out in Baskerville v. Culligan Intern. Co., 50 F.3d 428, 430–31 (7th Cir. 1995):

> Drawing the line is not always easy. On one side lie sexual assaults; other physical contact, whether amorous or hostile, for which there is no consent express or implied; uninvited sexual solicitations; intimidating words or acts; obscene language or gestures; pornographic pictures. Meritor Savings Bank v. Vinson, 477 U.S. 57, 67, 106 S.Ct. 2399, 2405–06, 91 L.Ed.2d 49 (1986); Harris v. Forklift Systems, Inc., 510 U.S. 17, ––––, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993); Carr v. Allison Gas

-18-

<u>Turbine Division</u>, 32 F.3d 1007, 1009-10 (7th Cir. 1994). On the other side lies the occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers. <u>Meritor Savings Bank v. Vinson</u>, <u>supra</u>, 477 U.S. at 61, 106 S.Ct. at 2402-03; <u>Rabidue v. Osceola Refining Co.</u>, 805 F.2d 611, 620-21 (6th Cir. 1986); <u>Katz v. Dole</u>, 709 F.2d 251, 256 (4th Cir. 1983). We spoke in Carr of "the line that separates the merely vulgar and mildly offensive from the deeply offensive and sexually harassing." 32 F.3d at 1010. It is not a bright line, obviously, this line between a merely unpleasant working environment on the one hand and a hostile or deeply repugnant one on the other; . . . .

In the present case, the frequency and severity of Defendants' alleged conduct is difficult, if not impossible, to assess given Plaintiff's generally vague recollection of events. Throughout his deposition, Plaintiff could not describe when any of the alleged harassing incidents occurred and, in most cases, what exactly occurred during the incidents themselves. He could not describe the so-called "vulgarity" or "obscenity." Even with respect to the "touching incident," Plaintiff could not recall whether Defendant Myers touched his genitals or just his leg in their encounter at the water fountain, nor could he recall when or how long the incident lasted. Moreover, he did not complain about it to Meyers and, more importantly, to Reittinger. In light of this, legitimate questions arise as to the "sexual" nature of the touching and its "offensiveness" to Plaintiff. The other two acts directed specifically at Plaintiff would seem to fall on the other side of the line because they were vague and isolated. Plaintiff, of course, wants to rely on the large amount of sexually charged banter and conduct among the employees or conduct directed at Matt Winfrey in order to bootstrap his case up to an actionable level of

-19-

conduct. However, Title VII was "not designed to purge the workplace of vulgarity." Baskerville v. Culligan Int'l Co., 50 F.3d 428, 430 (7th Cir. 1995); see also Hartsell v. Duplex Prods., Inc., 123 F.3d 766, 773 (4th Cir. 1997)("Title VII is not a federal guarantee of refinement and sophistication in the workplace"). Offensive language or conduct, including provocation of other employees and use of "ambiguously sexual innuendos," while arguably inappropriate, does not alone create a hostile work environment under Title VII. Hartsell, at 773 (citing Hopkins v. Baltimore Gas & Elec. Co., 77 F.3d 745, 754 (4th Cir. 1996)).

Given the paucity of evidence of harassment of Plaintiff and the vague evidence concerning the touching incident, Plaintiff fails to present more than a scintilla of evidence to survive summary judgment of actual sexual harassment directed toward him that created a workplace "permeated with [sex-based] intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Howard v. Winter, 446 F.3d 559, 565 (4th Cir. 2006)(quoting Harris, 510 U.S. at 21); Multi-Channel TV, 65 F.3d at 1119 (plaintiff must produce specific facts).

The second basis for dismissing the sexual harassment claim is that Plaintiff has failed to bring this action against a party who could be held liable under Title VII. The complaint only names the non-party AFI Notwithstanding, Defendants' brief states that the complaint alleges a Title VII claim against both Reittinger and Meyers. Even if this were so, employees cannot be held liable

under Title VII.  Title VII defines an employer as "a person engaged in an industry affecting commerce who has fifteen or more employees." 42 U.S.C. § 2000e(b).  It does not provide a cause of action against individual defendants, such as supervisors, who do not qualify as employers.  Baird ex. rel Baird v. Rose, 192 F.3d 462, 472 (4th Cir. 1999)(citing Lissau v. Southern Food Serv., Inc., 159 F.3d 177, 180-181 (4th Cir. 1998)).

## Retaliation/Constructive Discharge

Plaintiff titles Count III of his complaint "retaliation/constructive discharge in violation of N.C.G.S. § 143.422.2."[4]  In this count, he claims that his employer (1) retaliated against him for reporting sexual harassment and (2) does not adequately train its employees in the correct protocol regarding sexual harassment and retaliation.  (Compl. ¶¶ 32-33.) He further claims that, in response to his allegations of sexual harassment, Defendant Myers "retaliated against plaintiff by making unsubstantiated claims alleging poor work performance in an effort to damage plaintiff's work record, get him fired or get him to quit." (Compl. ¶ 37.)

Upon review of Plaintiff's testimony, the Court first notes that his constructive discharge claim cannot survive.  Constructive

---

[4]Notwithstanding the fact that Plaintiff uses federal law in his brief, it is clear that the retaliation claim was specifically alleged only under state law.  See Complaint ¶ 35.  Plaintiff has not shown that he filed an EEOC complaint alleging retaliation or constructive discharge.  He does include the EEOC determination letter, which only speaks to sexual harassment.  Furthermore, Plaintiff cannot use Title VII because he has failed to make his employer a party to the action.

discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces that employee to quit his job. Generally, an employee alleging constructive discharge must prove two elements: "(1) deliberateness of the employer's actions and (2) intolerability of the working conditions." Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1354 (4th Cir. 1995)(citations omitted). However, a claim of constructive discharge cannot succeed unless it also includes a more basic element, i.e., causation. If the evidence shows that the plaintiff did not quit, or quit for a reason other than his working conditions, then logically the plaintiff was not constructively discharged.

In this case, Plaintiff never claims that he quit as a result of intolerable working conditions. When asked why he left the company, Plaintiff simply responded that he quit his job with AFI to get a better job. (Pl.'s Dep. pp. 59-60.) In fact, he began another job, with better pay and benefits, within days of leaving AFI. (Pl.'s Dep. p. 60.) In light of these circumstances, Plaintiff cannot prevail as to his constructive discharge claim, and summary judgment is appropriate.

Plaintiff's retaliation claim under North Carolina's Equal Employment Practices Act ("NCEEPA") encounters a different, but equally fatal, flaw. In pertinent part, the NCEEPA provides that:

> [i]t is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color,

national origin, age, sex or handicap by employers which
regularly employ 15 or more employees.

N.C.G.S. § 143-422.2. "[W]hile this provision clearly pronounces
the State's public policy, it provides no remedy for its
violation." Mullis v. Mechanics & Farmers Bank, 994 F. Supp. 680,
687 (M.D.N.C. 1997). Because the NCEEPA does not create a private
right of action, it is only applicable to "common law wrongful
discharge claims or in connection with other specific statutory
remedies." Id.(citing Hughes v. Bedsole, 48 F.3d 1376, 1383 n.6
(4th Cir. 1995)). In addition, the Mullis court noted a second
ground for dismissal. Even if the NCEEPA did provide a private
right of action, the statute "does not express a public policy with
respect to retaliation for opposition to any form of discriminatory
practice." 994 F. Supp. at 687 n.5. Thus, Defendants' motion for
summary judgment as to Count III of the complaint is granted.

### Intentional/Negligent Infliction of Emotional Distress

In Plaintiff's final cause of action, Count IV, he brings both
intentional infliction of emotional distress ("IIED") and negligent
infliction of emotional distress ("NIED") claims against Defendants
Myers and Reittinger. Defendants counter that the exclusivity
provisions of North Carolina Workers' Compensation Act bar
Plaintiff's NIED claim. They also contend that Plaintiff's
evidence fails to meet the elements of IIED. The Court will
address each of these arguments in turn.

First, in asserting that Plaintiff's NIED claim falls within
the ambit of the Workers' Compensation Act, Defendants ignore the

-23-

clear holding of <u>Ridenhour v. Concord Screen Printers, Inc.</u>, 40 F. Supp. 2d 744 (M.D.N.C. 1999). In that case, the court extended the North Carolina Court of Appeals reasoning in <u>Hogan v. Forsyth Country Club Co.</u>, 79 N.C. App. 483, 340 S.E.2d 116 (1986), to encompass NIED claims. <u>Ridenhour</u>, 40 F. Supp. 2d at 746. The <u>Hogan</u> court held that a claim for IIED involving claims of sexual harassment is not barred by the Act, primarily because the type of injury suffered by a plaintiff in these circumstances, i.e., emotional injury, falls "outside the range of injuries covered under the Act." <u>Id.</u> While <u>Hogan</u> did not involve a claim for NIED, the <u>Ridenhour</u> court found that the reasoning employed in <u>Hogan</u> applied with "equal force" to both types of emotional distress claims. <u>Id.</u> For that reason, Defendants' motion for summary judgment on Plaintiff's NIED claim cannot be granted on this ground. Defendants provide no alternative argument for dismissal, and the Court declines, except as noted below, to explore other grounds at this time.[5]

The Court will <u>sua</u> <u>sponte</u> raise an obvious reason for dismissing Defendant Reittinger. As noted earlier, the only potentially outrageous conduct was the alleged touching incident. The jokes, pictures, etc., were not even directed at Plaintiff and obviously were not felt to be terribly inappropriate by most of the employees nor by the customers. The invitation by Meyers to see

---

[5]This ruling does not mean that Plaintiff's claim will necessarily survive a Rule 50 motion in the future; there is simply no need to discuss this possibility at the present time.

her bedroom and the comment that he was hired for his looks, likewise, cannot be deemed outrageous conduct. And, as to the alleged touching, the evidence supporting it is vague. Yet, even assuming the alleged touching qualifies, Plaintiff nowhere presents any evidence that Defendant Reittinger had any knowledge of this until after Plaintiff left for another job. Corporate documents, including employee interviews of Plaintiff and others, do not indicate that Plaintiff ever voiced complaints about Myers toward Reittinger prior to filing his EEOC complaint. These documents show that Winfrey, not Plaintiff, complained of Myers' sexual advances, and that Myers was subsequently admonished for her conduct. Without notice of the touching incident by Myers, Reittinger could not have acted deliberately to exacerbate it. Therefore, he will be dismissed as to both emotional distress claims. The Court will proceed to Plaintiff's IIED claim against Meyers.

In order to show intentional infliction of emotional distress ("IIED"), a plaintiff must demonstrate that the defendant engaged in (1) extreme and outrageous conduct (2) which is intended to cause and does cause (3) severe emotional distress. Hogan, 79 N.C. App. at 487-488. In this case, Plaintiff fails to sufficiently demonstrate at least one of these elements.

The North Carolina courts have defined "extreme and outrageous conduct" as "conduct [which] exceeds all bounds usually tolerated by decent society." Beck v. City of Durham, 154 N.C. App. 221, 231, 573 S.E.2d 183, 191 (2002)(citations omitted). "It is a

-25-

question of law for the court to determine, from the materials before it, whether the conduct complained of may reasonably be found to be sufficiently outrageous as to permit recovery." <u>Hogan</u>, 79 N.C. App. at 490, 340 S.E.2d at 121. To survive summary judgment, Plaintiff must provide non-conclusory admissible evidence supporting his claims. While Plaintiff's own testimony is certainly admissible that a touching occurred, it is extremely vague and conclusory. Moreover, there is no evidence Plaintiff objected to it or reported it to anyone. Therefore, the Court will only assume, for the sake of argument, that the alleged touching incident qualifies as outrageous conduct.

Plaintiff's claim does falter on the element whereby he must show he suffered severe emotional distress. Severe emotional distress is defined to mean "any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." <u>Johnson v. Ruark Obstetrics</u>, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990). To satisfy this element of an IIED claim, a plaintiff must forecast medical documentation or "evidence of 'severe and disabling' psychological problems within the meaning of the test laid down in <u>Johnson v. Ruark</u>." <u>Waddle v. Sparks</u>, 331 N.C. 73, 85, 414 S.E.2d 22, 28 (1992). This requirement presents a "high standard of proof" for plaintiffs. <u>Id.</u> at 83, 414 S.E.2d at 27. "The law intervenes only where the distress inflicted is so severe that no reasonable man could be

expected to endure it." Id. at 84, 414 S.E.2d at 27-28. Further, "[t]he intensity and duration of the distress are factors to be considered in determining its severity." Id. at 84, 414 S.E.2d at 28.

In this case, the symptoms of Plaintiff's alleged distress are difficulty sleeping, nightmares, decreased appetite, and generally increased stress and fatigue. (Pl.'s Dep. p. 66.) Plaintiff does not quantify these problems, nor does he detail when they began or how long they have lasted, although his deposition testimony suggests that his symptoms are ongoing. (Id.) Plaintiff also claims that he sought a doctor's care for his symptoms on at least one occasion. (Id. p. 29.) However, Plaintiff never alleges that his doctor diagnosed him as suffering from "neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition." Johnson v. Ruark, 327 N.C. at 304, 395 S.E.2d at 97.

Loss of sleep and appetite do not qualify as "severe or disabling" in the context of IIED claims. See Johnson v. Scott, 137 N.C. App. 534, 540, 528 S.E.2d 402, 405 (2000). Further, Plaintiff has not presented any medical documentation to support a finding that his difficulties are symptoms of a recognized emotional or mental condition. The paucity of medical care sought for the alleged symptoms itself creates an inference that the distress was not sufficiently severe to support an IIED claim. Without evidence establishing a substantial medical condition, his IIED claim cannot succeed, and summary judgment is appropriate.

**IT IS THEREFORE ORDERED** that Defendants' motion for summary judgment (docket no. 20) is denied as to the battery and negligent infliction of emotional distress claim against Defendant Meyers, but granted as to the remaining claims.

**IT IS FURTHER ORDERED** that Plaintiff's motion to amend the complaint to add and substitute Automotive Fasteners, Inc. and to dismiss Defendants Melton Jewell (who has already been dismissed) and James Reittinger (docket no. 22) is denied.

_____
**United States Magistrate Judge**

November 15, 2007